STATE OF NORTH CAROLINA v. DAVY GENE STEPHENS

No. 10A96

(Filed 5 December 1997)

**1. Criminal Law § 1375 (NCI4th Rev.)— capital sentencing— statutory mitigating circumstances—mitigating value**

The trial court did not err in a capital sentencing hearing in its instructions on statutory mitigating circumstances where defendant contended that the court instructed the jurors that they were required to consider only those mitigating circumstances they deemed to have mitigating value, but a reasonable interpretation of the instructions, construed contextually, could not have misled jurors to believe they could disregard any statutory mitigating circumstances found to exist. Defense counsel apparently did not notice the one instance in which the trial court partially mixed the statutory and nonstatutory standards and made no objection either at that point or later when specifically asked at the close of instructions if counsel had any corrections or objections. Moreover, the jurors had before them in each case an Issues and Recommendation form which clearly delineated the difference between statutory and nonstatutory circumstances. The one misstatement could not have confused the jury as to statutory and nonstatutory circumstances and did not constitute prejudicial error.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**Instructions to jury: Sympathy to accused as appropriate factor in jury consideration. 72 ALR3d 842.**

**2. Criminal Law § 431 (NCI4th Rev.)— capital murder—prosecutor's argument—evidence not rebutted by defendant— not a comment on defendant's failure to testify**

There was no violation of a defendant's constitutional rights in a capital prosecution for first-degree murder where the prosecutor in his closing argument challenged the defense to explain why defendant was found in an attic with one of the murder weapons if he was not guilty. The prosecutor did not comment directly on defendant's failure to testify, but fairly argued that defendant had failed to present exculpatory evidence that rebutted the State's evidence relating to where the murder weapon was found.

**Am Jur 2d, Trial §§ 595-604.**

**3. Criminal Law § 120 (NCI4th Rev.)— capital murder—copy of ballistics report—typo—not revealed until trial—no mistrial**

The trial court did not abuse its discretion during a capital prosecution for first-degree murder by denying defendant's request for a mistrial where defendant received a copy of the ballistic report six months before trial and a typographical error was revealed through the testimony of an SBI agent. Although defendant contends that the statement was essential to the theory of his case, the inconsistency was plain on its face; defendant had ample opportunity to investigate the error; if anything, defendant was advantaged rather than prejudiced by showing the fallibility of the State's expert; and the error was not probative or exculpatory. Defendant was not prejudiced by the trial testimony which corrected the typographical error in the report; even assuming a discovery violation, the trial court did not abuse its discretion in deciding not to sanction the State. The record shows a well-reasoned decision; the court clearly expressed the thought that this statement in the report should have raised some question in defense counsel's mind.

**Am Jur 2d, Depositions and Discovery §§ 426, 427.**

**Right of defendant in criminal case to inspection of statement of prosecution's witness for purposes of cross-examination or impeachment. 7 ALR3d 181.**

**4. Criminal Law § 1340 (NCI4th Rev.)— capital sentencing— hearsay testimony—not relevant—not admissible**

The trial court did not err during a capital sentencing hearing by preventing defendant from introducing a conversation which occurred between defendant's girlfriend and the wife of his accomplice immediately prior to the murders and which defendant contended supported the mitigating circumstance that defendant played only a minor role in the murders in that the jury could have inferred that the accomplice's desire to retrieve pawned rings was the primary motive for going to the scene. Although it has been held that the rules of evidence may be relaxed during the sentencing phase when the statements are relevant and trustworthy, the Supreme Court has never stated that the rules of evidence should be totally abandoned. For a hearsay statement to be permitted in a sentencing hearing, it must be relevant to a sentencing issue and bear indicia of reliability. This tes-

timony is not relevant to the circumstance that defendant played only a minor role in the murders because it fails totally to establish that the rings were the motivating factor which sent defendant and his accomplice to the scene or induced them to shoot six people and kill three.

**Am Jur 2d, Criminal Law §§ 598, 599.**

5. **Criminal Law § 693 (NCI4th Rev.)— capital sentencing— mitigating circumstances—no history of criminal activity— peremptory instruction—denied**

The trial court did not err in a capital sentencing hearing by denying defendant's request to peremptorily instruct the jury that defendant had no significant history of criminal activity where defendant argued that his misdemeanor offenses and his history of drug abuse do not constitute a significant history of prior criminal activity. A peremptory instruction is appropriate when all evidence goes to support that circumstance; it is apparent that this evidence was of such nature that a sentencing jury could reasonably find this circumstance to exist, but there was evidence of prior criminal activity and convictions and it was for the jury to decide whether these constituted a "significant" history.

**Am Jur 2d, Criminal Law §§ 598, 599.**

6. **Jury §§ 228, 226 (NCI4th)— capital murder—jury selection—jurors excused for cause—no error**

The trial court did not abuse its discretion in a capital prosecution by allowing the State's challenge for cause of two prospective jurors who indicated that they might have difficulty voting in favor of the death penalty, and by not allowing defendant to rehabilitate one prospective juror. The full text of the voir dire clearly indicates that both prospective jurors clearly expressed their personal opposition to the death penalty without any equivocation.

**Am Jur 2d, Jury § 279.**

7. **Criminal Law § 1353 (NCI4th Rev.)— capital sentencing— instruction—duty to recommend death**

The pattern jury instruction for capital sentencing imposing a duty upon the jury to return a recommendation of death if it finds the mitigating circumstances insufficient to outweigh

the aggravating circumstances and the aggravating circumstances sufficiently substantial to call for the death penalty is constitutional.

**Am Jur 2d, Trial §§ 1441 et seq.**

**8. Criminal Law § 1349 (NCI4th Rev.)— capital sentencing—instruction—mitigating circumstances must outweigh aggravating circumstances**

A first-degree murder defendant's constitutional rights were not violated by the trial court's instruction to the jury that mitigating circumstances must outweigh aggravating circumstances and thereby directing the jury to answer Issue III affirmatively if it found the mitigating circumstances were of equal weight of the aggravating circumstances.

**Am Jur 2d, Trial §§ 1441 et seq.**

**9. Criminal Law § 1349 (NCI4th Rev.)— capital sentencing—instructions—nonstatutory mitigating evidence—value**

The trial court did not err in a capital sentencing hearing in its instructions by not allowing the jury to consider evidence as mitigating if it found that the nonstatutory mitigating circumstance had no value.

**Am Jur 2d, Trial §§ 1441 et seq.**

**10. Criminal Law § 1360 (NCI4th Rev.)— capital sentencing—aggravating circumstances—notice**

The trial court did not err in a capital sentencing hearing by denying defendant's motion to require the prosecution to disclose the aggravating circumstances that it intended to rely upon during the sentencing phase of the trial. It has been consistently held that a defendant is not constitutionally entitled to an enumeration of the aggravating factors to be used against him; statutory notice as contained in N.C.G.S. § 15A-2000(e) is sufficient.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**11. Jury § 32 (NCI4th)— capital sentencing—jurors excused by district court judge**

The trial court did not err in a capital sentencing hearing by denying defendant's motion to prohibit district court judges from excusing prospective jurors outside defendant's presence. The district court properly conducted this preliminary, administrative

process pursuant to statute, and such process was not part of the defendant's capital trial.

**Am Jur 2d, Jury §§ 131, 132.**

**12. Criminal Law § 1374 (NCI4th Rev.)— capital sentencing— aggravating circumstances—course of conduct—not vague and overbroad**

The course of conduct aggravating circumstance for first-degree murder sentencing is not unconstitutional as vague and overbroad.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**13. Constitutional Law § 370 (NCI4th)— death penalty—not unconstitutional**

The North Carolina death penalty statute, N.C.G.S. § 15A-2000, is not unconstitutional, arbitrary and discriminatory on its face and as applied.

**Am Jur 2d, Criminal Law §§ 581, 612, 613, 615.**

**14. Criminal Law § 1402 (NCI4th Rev.)— death penalty—not disproportionate**

A death sentence was not disproportionate where the record fully supports the aggravating circumstances found by the jury, there is no evidence or indication that the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor, this case is distinguishable from the cases in which the death penalty was found disproportionate, and it is similar to cases where the death penalty was found proportionate. Defendant was convicted of the murder of three individuals and the jury convicted defendant on the theory of malice, premeditation, and deliberation in all of the murders, which indicates a more cold-blooded and calculated crime. An additional aggravating circumstance was found in two of the murders.

**Am Jur 2d, Criminal Law § 628.**

Appeal as of right by defendant pursuant to N.C.G.S. § 7A-27(a) from judgments imposing three sentences of death entered by Cashwell, J., at the 27 November 1995 Criminal Session of Superior Court, Johnston County, upon jury verdicts finding defendant guilty of three counts of first-degree murder. Defendant's motion to bypass the Court of Appeals as to additional judgments was allowed by this

**STATE v. STEPHENS**

[347 N.C. 352 (1997)]

Court 19 December 1996. Heard in the Supreme Court 8 September 1997.

> *Michael F. Easley, Attorney General, by Tiare B. Smiley, Special Deputy Attorney General, for the State.*

> *John R. Rittelmeyer for defendant-appellant.*

LAKE, Justice.

The defendant was indicted on 13 February 1995 for three counts of first-degree murder and two counts of assault with a deadly weapon with intent to kill inflicting serious injury; on 20 March 1995, he was indicted for an additional count of assault with a deadly weapon with intent to kill. Defendant was tried capitally to a jury at the 27 November 1995 Criminal Session of Superior Court, Johnston County, Judge Narley L. Cashwell presiding. The jury found defendant guilty of all charges. Following a capital sentencing proceeding, the jury recommended sentences of death as to each murder conviction. On 20 December 1995, the trial court sentenced defendant to three separate sentences of death, one for each of the three convictions for first-degree murder; to a term of sixty-three to eighty-five months' imprisonment on each of the two convictions for assault with a deadly weapon with intent to kill inflicting serious injury; and to a term of twenty-five to thirty-nine months' imprisonment on the conviction for assault with a deadly weapon with intent to kill.

At trial, the State presented evidence tending to show that on the evening of 20 January 1995, defendant and his accomplice, William Barrow, had dinner together and shared a bottle of Everclear and some whisky. The following morning, at approximately 2:00 a.m., defendant and Barrow drove to the Johnston County Grill Road home of Lynn Wright, a reputed drug dealer. Upon arrival, defendant and Barrow went straight to Wright's bedroom and shot him six times, killing him. Defendant and Barrow then separated in the house, and Barrow walked onto the porch and shot Antwon Jenkins in the head, killing him. Barrow then attempted to kill James White, but the bullet only grazed the side of White's face. Defendant entered the living room and attempted to shoot eighty-three-year-old Kenneth Farmer in the head, but the shot only hit Farmer in the arm as he threw his hand up. Defendant next tried to shoot John Wright but apparently ran out of bullets. Defendant and Barrow then left the Grill Road home but returned shortly thereafter. At this time, defendant shot and killed Michael Kent Jones, and Barrow seriously injured June Bates

with gunshot wounds to her back and arm. Bates escaped and called for help from a nearby house.

When deputies arrived at the Grill Road home on 21 January 1995, they found a black man lying on the porch, dying from gunshot wounds to his head. The officers found four fired cartridge cases, caliber 38 Special, in a water basin in the front room. In the first bedroom, the officers found another black man, Lynn Wright, lying on the floor surrounded by blood and crack cocaine. Behind the house, the officers found another victim, Kenneth Farmer, who had been shot in the left arm. Farmer was able to identify one of the shooters as defendant Davy Stephens because Stephens had been to the house on several previous occasions. Farmer later picked Stephens out of a police photographic lineup. Following a lead, officers found defendant hiding in the attic of a house occupied by his girlfriend, and he was apprehended. The officers also found a 38 Special revolver near defendant in the attic.

The State offered testimony from three medical examiners who concluded that Lynn Wright, Antwon Jenkins and Michael Kent Jones all died of gunshot wounds. Special Agent Eugene Bishop gave a ballistic report on the 38 Special revolver found with the defendant at the time of his arrest and determined that four cartridge casings found in the water basin at the Grill Road house were fired by this 38 Special. Bishop also tested a bullet found in the clothes of June Bates and concluded this bullet bore rifling characteristics similar to a 357 Magnum.

[1] In his first assignment of error, defendant contends that the trial court erred in instructing the jurors, in the sentencing phase, that they were required to consider only those statutory mitigating circumstances that they deemed to have mitigating value. Defendant thus argues that he is entitled to a new sentencing proceeding because there is a reasonable likelihood such instruction led the jurors to believe they could accord no mitigating value to the statutory mitigating circumstances. We conclude the jury could not have been so misled.

The trial court's instructions to the jury, when read as a whole and viewed in light of the Issues and Recommendation as to Punishment forms, did not misinform jurors of their duty to weigh any statutory mitigating circumstance which they found to exist. when considering their recommendation of a life imprisonment or death sentence. A reasonable interpretation of the instructions, con-

strued contextually, could not have misled jurors to believe they could disregard any statutory mitigating circumstances found to exist. A jury charge must be construed contextually and will be upheld when the charge as a whole is correct. *State v. Chandler*, 342 N.C. 742, 751-52, 467 S.E.2d 636, 641, *cert. denied*, —— U.S. ——, 136 L. Ed. 2d 133 (1996).

Reading the entire charge in context, the instructions in question could not have had the effect of confusing issues of statutory and nonstatutory mitigating circumstances for the jury. Since defendant was on trial for three separate murders, the trial court gave three separate instructions on mitigating circumstances. The trial court, in each of the three cases, submitted and instructed on three statutory mitigators: that defendant had no significant history of prior criminal activity, N.C.G.S. § 15A-2000(f)(1); that the capital felony was committed while defendant was under the influence of mental or emotional disturbance, N.C.G.S. § 15A-2000(f)(2); and that the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired, N.C.G.S. § 15A-2000(f)(6). The (f)(4) mitigator, that the murder was committed by another and defendant was only an accomplice and his participation was relatively minor, was submitted with respect to one of the murders. In all three cases, the jury answered "yes" with respect to the (f)(1) and (f)(2) statutory mitigators while at the same time rejecting the (f)(6) mitigator, and the jury rejected the (f)(4) mitigator in the one case. Further, in each case, the trial court submitted eighteen nonstatutory mitigating circumstances and the catchall provision, and the jury in each case found that eight of these both existed and had mitigating value. The jury thus demonstrated its discernment in light of the instructions.

With regard to each of the statutory mitigating circumstances in each case, the trial court instructed the jurors that they "will find this *mitigating circumstance*" if they find particular factual matters exist, and that if one or more of the jurors find "by a preponderance of the evidence that this circumstance exists you would so indicate by having your foreperson write, yes, in the space provided after *this mitigating circumstance* on the Issues and Recommendation Form." (Emphasis added.) This was a correct instruction and specifically informed the jurors that each was a "mitigating circumstance" if one or more of them found it to exist.

We do note that in one instance the trial court partially mixed the statutory and nonstatutory standards. After instructing the jury on

the facts that would support the (f)(1) mitigator, the no significant history of prior criminal activity circumstance, in the murder of Lynn Wright, the trial court properly instructed the jurors that if they found this circumstance to exist, their foreperson would so indicate by writing "yes" on the form, but if none of them found this circumstance to exist, their foreperson should write "no" on the form. The trial court then mistakenly added the phrase, "[t]he foreperson is to answer yes as to mitigating circumstances if one juror finds a mitigating circumstance and deems it to be mitigating." It is significant with respect to the jury's notice of this statement that defense counsel did not apparently notice this miscue and made no objection either at this point or later at the close of jury instructions when specifically asked by the trial court if counsel had any corrections or objections.

This Court has previously held that a mere *lapsus linguae* by the trial court while reading instructions to the jury, which is not called to the trial court's attention at the time it is made, will not constitute prejudicial error when it is apparent from a contextual reading that the jury could not have been misled. *State v. Reid*, 335 N.C. 647, 667, 440 S.E.2d 776, 787 (1994). This situation is distinguishable from those cases in which this Court has found error where the trial court's instructions confused statutory and nonstatutory mitigating circumstances. *See State v. Roseboro*, 344 N.C. 364, 379-80, 474 S.E.2d 314, 322-23 (1996); *State v. Howell*, 343 N.C. 229, 239-40, 470 S.E.2d 38, 43-44 (1996); *State v. Jaynes*, 342 N.C. 249, 285, 464 S.E.2d 448, 470 (1995), *cert. denied*, —— U.S. ——, 135 L. Ed. 2d 1080 (1996). In *Howell* and *Jaynes*, the trial court lumped together all of the statutory and nonstatutory mitigating circumstances, improperly informing the jury that it should determine if statutory mitigating evidence had mitigating value. In *Roseboro*, the trial court applied the nonstatutory standard for determining mitigating value to all of the statutory and nonstatutory mitigating evidence. In contrast, in this case, no such broad, all-encompassing instructions were applied, and correct written instructions were included on the Issues and Recommendation form as to each circumstance submitted. The jurors had before them in each case an Issues and Recommendation form which clearly delineated the difference between statutory and nonstatutory, designating each statutory circumstance as "mitigating" and each nonstatutory circumstance as requiring a finding that it both exists and has mitigating value.

In light of the instructions as a whole and the correct Issues and Recommendation forms taken by the jury into the jury room, we con-

clude that this one misstatement could not have confused the law as to statutory and nonstatutory circumstances for the jury and did not constitute prejudicial error. This assignment of error is overruled.

[2] In his second assignment of error, defendant contends that the prosecutor commented on defendant's election not to testify, thus violating defendant's constitutional rights. In closing, the prosecutor argued:

> MR. LOCK: The defense may raise other challenges to our evidence when they argue to you but I have a challenge. I challenge them to explain why their client was found in an attic—
>
> MR. HOLLAND: Objection.
>
> THE COURT: Overruled.
>
> MR. LOCK: —with one of the murder weapons located just inches from him if he's not guilty.

This brief statement in argument by the prosecutor clearly does not constitute a comment on the defendant's failure to testify and merely draws the jury's attention to the fact that particular evidence offered by the State was uncontradicted or unrebutted. The prosecution is, of course, forbidden by both the Fifth Amendment to our federal Constitution and by statute from commenting on the failure of a defendant to testify at trial. *Griffin v. California*, 380 U.S. 609, 14 L. Ed. 2d 106 (1965); N.C.G.S. § 8-54 (1986); *State v. York*, 347 N.C. 79, 489 S.E.2d 380 (1997). However, a prosecutor's argument that the State's evidence was uncontradicted does not constitute an improper reference to the defendant's failure to testify. *State v. Richardson*, 342 N.C. 772, 786, 467 S.E.2d 685, 693, *cert. denied*, —— U.S. ——, 136 L. Ed. 2d 160 (1996). Here, the prosecutor did not comment directly or indirectly on defendant's failure to testify, but fairly argued that defendant had failed to present exculpatory evidence that rebutted the State's evidence relating to where the murder weapon was found. This assignment of error is without merit.

[3] In his third assignment of error, defendant asserts that the trial court committed reversible error in denying the defense's request for a mistrial after an alleged discovery violation arose during trial. Defendant contends that a discovery violation occurred when a typographical error in a State Bureau of Investigation (SBI) ballistic report was revealed through testimony of an SBI agent. We disagree. Under the particular facts and circumstances here presented, there

was no discovery violation, and the trial court did not abuse its discretion in denying defendant's motion for a mistrial.

Defendant asserts that the State committed a discovery violation under N.C.G.S. § 15A-907, which requires the State to continue to disclose evidence as it is discovered, and under N.C.G.S. § 15A-903(d), which requires the State to turn over all documents and tangible objects material to the preparation of the defense. The facts of this case do not support defendant's position. The defendant received a copy of the ballistic report six months before trial. The section of the report in question reads: "Q-1 has similar rifling characteristics and some microscopic markings in common with tests fired from K-1, but lacks sufficient microscopic detail to determine that K-2 fired Q-1." This statement on the report is at best unclear as to whether it is a reference to the 38 Special revolver or the 357 Magnum revolver, and in light of this, it was neither probative nor exculpatory. The State complied with N.C.G.S. § 15A-903(d) when it provided the ballistic report to the defense approximately six months before trial. Furthermore, the State did not violate N.C.G.S. § 15A-907 in breaching its continuing duty to disclose evidence since the prosecutor himself read and noticed the inconsistency in the report only the evening before trial, and any detailed reading would reflect an uncertainty as to its meaning. The prosecutor's failure to discuss this lack of clarity or discrepancy in the report with defense counsel, after it was confirmed as a typographical error by the witness at the lunch recess just prior to the witness' testimony, did not prejudice the defendant or constitute a discovery violation under N.C.G.S. § 15A-907.

Defendant contends that this one statement in the report was essential to the theory of his case and that he was irreparably prejudiced when the typographical error was discovered so close to the end of trial. We find this argument to be without merit. The inconsistency in the report was plain on its face, and the defendant had ample opportunity to investigate the error. Furthermore, under the facts here presented, defendant was not prejudiced, but, if anything, was advantaged by showing the fallibility of the State's expert. Significantly, the error was not probative or exculpatory. The defendant's theory that Barrow shot both Bates and Jones is not corroborated by this one unclear, inconsistent statement in the ballistic report, and there was plenary evidence from eyewitnesses as to the physical locations of defendant and Barrow relative to their victims. We thus hold defendant was not prejudiced by the trial testimony which corrected the typographical error in the ballistic report.

However, even assuming *arguendo* this was a discovery violation, the trial court did not abuse its discretion in deciding not to sanction the State. "The sanction for failure to make discovery when required is within the sound discretion of the trial court and will not be disturbed absent a showing of abuse of discretion." *State v. Herring,* 322 N.C. 733, 747-48, 370 S.E.2d 363, 372 (1988); *accord State v. King,* 311 N.C. 603, 619, 320 S.E.2d 1, 11 (1984). The record in this case shows that the trial court made a well-reasoned decision. The trial court clearly expressed the thought that this statement in the report should have raised some question in defense counsel's mind that this statement may have contained an error. The trial court stated: "I mean just to read that . . . seems to me would have caused someone to say, 'there must be a problem here.' They are comparing this bullet against two different . . . guns." We therefore hold that there was no discovery violation and that the trial court did not abuse its discretion when it denied the motion for a mistrial. This assignment of error is overruled.

**[4]** In defendant's fourth assignment of error, he contends that the trial court, during the sentencing phase, committed reversible error in preventing defendant from introducing testimony concerning a conversation between Mrs. Barrow and Debbie Jordan, defendant's girlfriend, which occurred immediately prior to the murder. Defendant contends that this conversation would have provided probative evidence supporting the N.C.G.S. § 15A-2000(f)(4) mitigating circumstance, that he played only a minor role in the murders on Grill Road, and that the plan was "hatched" by William Barrow. Defendant contends that testimony by Jordan would have established that Barrow pawned his wife's rings to Lynn Wright and that Wright had later sold these rings. Defendant asserts that the jury could have inferred from this testimony that Barrow's desire to retrieve these rings was the primary motive for going to the Grill Road home. However, the testimony proffered by Jordan merely established that she knew through the defendant and the Barrows that Lynn Wright would take items in pawn for drugs and that Mrs. Barrow was missing some rings. This evidence is not only hearsay, but is irrelevant.

Although the North Carolina Rules of Evidence do not apply formally to sentencing hearings, N.C.G.S. § 8C-1, Rule 1101(b)(3) (1992), for a hearsay statement to be permitted in a sentencing proceeding, it must be relevant to a sentencing issue and bear indicia of reliability. *State v. Price,* 326 N.C. 56, 388 S.E.2d 84, *sentence vacated on other grounds,* 498 U.S. 802, 112 L. Ed. 2d 7 (1990); *State v. Barts,* 321 N.C.

170, 362 S.E.2d 235 (1987). The desired testimony of Debbie Jordan regarding the missing rings is not relevant to the (f)(4) mitigating circumstance that defendant played only a minor role in the murders because it fails totally to establish that the rings were the motivating factor which sent defendant and Barrow to the Grill Road home or, more to the point, induced them to shoot six people, killing three.

Defendant further contends that in not allowing the testimony, the trial court violated his due process rights to present evidence. We disagree. Although this Court has held that the rules of evidence may be relaxed during the sentencing phase when the statements are relevant and trustworthy, *Barts*, 321 N.C. at 180, 362 S.E.2d at 240, this Court has never stated that the rules of evidence should be totally abandoned. We conclude that the proffered testimony of Jordan concerning the pawning of Mrs. Barrow's rings had no relevance to the (f)(4) mitigating circumstance, and this assignment of error is overruled.

**[5]** In his fifth assignment of error, defendant asserts that the trial court committed reversible error in denying defendant's request to peremptorily instruct the jury that defendant had no significant history of criminal activity. The defendant argues that his misdemeanor offenses and his history of drug abuse do not constitute a significant history of prior criminal activity, and he was, therefore, entitled to a peremptory instruction that he had no significant history of prior criminal activity and that the jury should accord mitigating weight to that circumstance. We do not agree.

A peremptory instruction is appropriate when all evidence goes to support that circumstance. *State v. Wooten*, 344 N.C. 316, 334, 474 S.E.2d 360, 370 (1996), *cert. denied*, —— U.S. ——, 137 L. Ed. 2d 348 (1997); *State v. Gay*, 334 N.C. 467, 492, 434 S.E.2d 840, 854 (1993). The trial court must give a peremptory instruction on a statutory mitigating circumstance when the evidence is uncontroverted. *State v. Simpson*, 341 N.C. 316, 344, 462 S.E.2d 191, 207 (1995), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d 194 (1996). The crucial issue for this Court is thus whether the evidence is uncontroverted that defendant had no significant history of criminal activity. Generally, "[s]ignificant means important or notable." *State v. Noland*, 312 N.C. 1, 20, 320 S.E.2d 642, 654 (1984), *cert. denied*, 469 U.S. 1230, 84 L. Ed. 2d 369 (1985). Upon review of this evidence, it is apparent that while the evidence relevant to this mitigating circumstance was of such nature that a sentencing jury could reasonably find this circumstance to exist and its

submission to the jury was thus proper, there was evidence of prior criminal activity and convictions, and it was thus for the jury to decide whether these constituted a "significant" history. The evidence establishes that defendant was convicted in 1982 of hit-and-run property damage and driving under the influence. In 1983, he was convicted of driving while his license was suspended; in 1986, he was convicted again of driving under the influence. Furthermore, defendant had a long history of purchasing and using illegal drugs. The trial court did not err by refusing a peremptory instruction and by leaving to the jury the determination of the existence of this statutory mitigating circumstance.

[6] In his sixth assignment of error, defendant contends that the trial court erroneously allowed the State's challenge for cause of two prospective jurors, Lillie Vinson and Thurmon Holder, who indicated that they might have difficulty voting in favor of the death penalty. In addition, defendant complains that he was not given the opportunity to rehabilitate prospective juror Holder. We conclude there was no error in this regard.

This Court has held: "Whether to allow a challenge for cause in jury selection is a decision ordinarily left to the sound discretion of the trial court which will not be reversed on appeal except for abuse of discretion." *State v. Locklear*, 331 N.C. 239, 247, 415 S.E.2d 726, 731 (1992); *accord State v. Kennedy*, 320 N.C. 20, 28, 357 S.E.2d 359, 364 (1987). The standard for determining when a prospective juror may be excluded for cause because of his views on capital punishment is whether the prospective juror's views would " 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' " *Wainwright v. Witt*, 469 U.S. 412, 424, 83 L. Ed. 2d 841, 851-52 (1985) (quoting *Adams v. Texas*, 448 U.S. 38, 45, 65 L. Ed. 2d 581, 589 (1980)); *accord State v. Davis*, 325 N.C. 607, 621-22, 386 S.E.2d 418, 425 (1989), *cert. denied*, 496 U.S. 905, 110 L. Ed. 2d 268 (1990). Because "a prospective juror's bias for or against the death penalty cannot always be proven with unmistakable clarity," this Court must defer to the trial court's judgment concerning whether a prospective juror would be able to follow the law. *State v. Miller*, 339 N.C. 663, 679, 455 S.E.2d 137, 145, *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 169 (1995).

In the case *sub judice*, the full text of the *voir dire* clearly indicates that both prospective jurors Vinson and Holder clearly expressed their personal opposition to the death penalty without any

equivocation. Under these circumstances, the trial court did not abuse its discretion by excusing these prospective jurors for cause. Furthermore, the trial court did not abuse its discretion in denying defendant's request to attempt to rehabilitate prospective juror Holder. Whether to allow defendants an opportunity to rehabilitate a prospective juror challenged for cause lies within the trial court's discretion. *State v. Flippen,* 344 N.C. 689, 697-98, 477 S.E.2d 158, 163 (1996); *State v. Burr,* 341 N.C. 263, 281, 461 S.E.2d 602, 611 (1995), *cert. denied,* —— U.S. ——, 134 L. Ed. 2d 526 (1996); *State v. Daughtry,* 340 N.C. 488, 509, 459 S.E.2d 747, 757 (1995), *cert. denied,* —— U.S. ——, 133 L. Ed. 2d 739 (1996). Prospective juror Holder unequivocally demonstrated that his opposition to the death penalty would substantially impair his ability to perform his duties as a juror. This assignment of error is without merit.

## PRESERVATION ISSUES

[7] Defendant in his seventh assignment of error seeks this Court's reconsideration of its prior decisions upholding the constitutionality of our pattern instruction imposing a "duty" upon the jury to return a recommendation of death if it finds the mitigating circumstances insufficient to outweigh the aggravating circumstances and the aggravating circumstances sufficiently substantial to call for the death penalty. *State v. DeCastro,* 342 N.C. 667, 467 S.E.2d 653, *cert. denied,* —— U.S. ——, 136 L. Ed. 2d 170 (1996); *State v. Robinson,* 336 N.C. 78, 443 S.E.2d 306 (1994), *cert. denied,* 513 U.S. 1089, 130 L. Ed. 2d 650 (1995); *State v. Syriani,* 333 N.C. 350, 428 S.E.2d 118, *cert. denied,* 510 U.S. 948, 126 L. Ed. 2d 341 (1993); *State v. McDougall,* 308 N.C. 1, 301 S.E.2d 308, *cert. denied,* 464 U.S. 865, 78 L. Ed. 2d 173 (1983); *State v. Pinch,* 306 N.C. 1, 292 S.E.2d 203, *cert. denied,* 459 U.S. 1056, 74 L. Ed. 2d 622 (1982). Upon consideration of defendant's argument and authorities cited, we find no compelling reason for this Court to overrule our previous holding on this issue. This assignment of error is overruled.

[8] In his eighth assignment of error, defendant asserts that his constitutional rights were violated by the trial court's instruction to the jury that mitigating circumstances must outweigh aggravating circumstances and thereby directing the jury to answer Issue III affirmatively if it found the mitigating circumstances were of equal weight to the aggravating circumstances. Issue III on the Issues and Recommendation as to Punishment form provides: "Do you unanimously find beyond a reasonable doubt that the mitigating circum-

stance or circumstances found is, or are, insufficient to outweigh the aggravating circumstance or circumstances found?" Defendant acknowledges that this Court has previously decided this issue adversely to defendant's position and upheld the constitutionality of this instruction. *State v. Keel*, 337 N.C. 469, 493-94, 447 S.E.2d 748, 761-62 (1994), *cert. denied*, 513 U.S. 1198, 131 L. Ed. 2d 147 (1995). We find no basis for reversing our prior holding in this regard. This assignment of error is overruled.

**[9]** Next, defendant contends in his ninth assignment of error that the trial court erred in its instructions in not allowing the jury to consider evidence as mitigating if it found that the nonstatutory mitigating circumstance had no mitigating value. It is well established under North Carolina law that the instruction given by the trial court in this regard is correct and not in violation of the state or federal Constitution. *State v. Womble*, 343 N.C. 667, 694, 473 S.E.2d 291, 307 (1996), *cert. denied*, —— U.S. ——, 136 L. Ed. 2d 719 (1997). This instruction does not limit or prevent the jury's consideration of any relevant evidence in mitigation. It simply requires the jury to find both the existence of the nonstatutory circumstance and that it has mitigating value. We therefore reject this assignment of error.

**[10]** In his tenth assignment of error, defendant argues that the trial court erred in denying defendant's motion to require the prosecution to disclose the aggravating circumstances that it intended to rely upon during the sentencing phase of the trial. This Court has consistently held that "a defendant is not constitutionally entitled to an enumeration of aggravating factors to be used against him: statutory notice as contained in N.C.G.S. § 15A-2000(e) is sufficient." *State v. McLaughlin*, 323 N.C. 68, 84, 372 S.E.2d 49, 61 (1988), *sentence vacated on other grounds*, 494 U.S. 1021, 108 L. Ed. 2d 601 (1990); *accord State v. Taylor*, 304 N.C. 249, 257, 283 S.E.2d 761, 767 (1981), *cert. denied*, 463 U.S. 1213, 77 L. Ed. 2d 1398 (1983). This assignment of error is overruled.

**[11]** In his eleventh assignment of error, defendant contends that the trial court erred in denying defendant's motion to prohibit district court judges from excusing prospective jurors outside of defendant's presence. The district court's excusal or deferral of prospective jurors prior to trial did not violate defendant's constitutional right to be present at all phases of his trial because his trial had not yet begun. The district court properly conducted this preliminary, administrative process pursuant to statute, and such process was not part

of the defendant's capital trial. *State v. Geddie*, 345 N.C. 73, 92, 478 S.E.2d 146, 155 (1996), *cert. denied*, —— U.S. ——, —— L. Ed. 2d ——, 66 U.S.L.W. 3255 (1997); *State v. McCarver*, 341 N.C. 364, 379, 462 S.E.2d 25, 33 (1995), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d 482 (1996); *State v. Cole*, 331 N.C. 272, 275, 415 S.E.2d 716, 717 (1992). This assignment of error is overruled.

**[12]** Defendant's twelfth assignment of error is that the course of conduct aggravating circumstance is unconstitutional because it is vague and overbroad. This Court has repeatedly held that North Carolina's capital sentencing scheme contained in N.C.G.S. § 15A-2000 is constitutional on its face and as applied. *State v. McKoy*, 327 N.C. 31, 37-39, 394 S.E.2d 426, 429-30 (1990); *State v. Barfield*, 298 N.C. 306, 343-54, 259 S.E.2d 510, 537-44 (1979), *cert. denied*, 448 U.S. 907, 65 L. Ed. 2d 1137 (1980). This Court has also held the course of conduct aggravating circumstance is constitutional and is not vague or overbroad. *State v. Cole*, 343 N.C. 399, 421, 471 S.E.2d 362, 373 (1996), *cert. denied*, —— U.S. ——, 136 L. Ed. 2d 624 (1997); *State v. Williams*, 305 N.C. 656, 684-86, 292 S.E.2d 243, 260-61, *cert. denied*, 459 U.S. 1056, 74 L. Ed. 2d 622 (1982). We decline to revisit this issue, and this assignment of error is overruled.

**[13]** In his final assignment of error, defendant argues that the North Carolina death penalty statute, N.C.G.S. § 15A-2000, is unconstitutional, arbitrary and discriminatory on its face and as applied in this case. This Court has consistently held that "North Carolina's death penalty statute, N.C.G.S. § 15A-2000, is constitutional and not based upon subjective discretion, applied arbitrarily, capriciously, or pursuant to a pattern of discrimination based upon race, gender, or poverty." *State v. Garner*, 340 N.C. 573, 605, 459 S.E.2d 718, 735 (1995), *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 872 (1996); *accord State v. Williams*, 339 N.C. 1, 52, 452 S.E.2d 245, 275 (1994), *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 61 (1995). Defendant concedes this issue has been considered and rejected. We therefore stand by our holding in *Garner* and reject this assignment of error.

## PROPORTIONALITY REVIEW

**[14]** Having found no error in either the guilt/innocence phase of defendant's trial or the capital sentencing proceeding, we are required by statute to review the record and determine (1) whether the evidence supports the aggravating circumstances found by the jury; (2) whether passion, prejudice or "any other arbitrary factor" influenced the imposition of the death sentence; and (3) whether the

sentence "is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." N.C.G.S. § 15A-2000(d)(2).

In the present case, the defendant was convicted of three counts of first-degree murder, two counts of assault with a deadly weapon with intent to kill inflicting serious injury and one count of assault with a deadly weapon with intent to kill. In all three murders, the jury found the aggravating circumstance that the murders were part of a course of conduct by defendant including other crimes of violence against other persons. Further, in the murders of Antwon Jenkins and Michael Kent Jones, the jury found the murders were committed for the purpose of avoiding arrest, by means of eliminating these victims as witnesses. After thoroughly reviewing the record, transcript and briefs in the present case, we conclude that the record fully supports the aggravating circumstances found by the jury. We further conclude that there is no evidence or indication that the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor.

The final statutory duty of this Court is to conduct a proportionality review. One purpose of proportionality review is to guard "against the capricious or random imposition of the death penalty." *State v. Barfield*, 298 N.C. at 354, 259 S.E.2d at 544. Another "is to eliminate the possibility that a person will be sentenced to die by the action of an aberrant jury." *State v. Holden*, 321 N.C. 125, 164-65, 362 S.E.2d 513, 537 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). In conducting proportionality review, we compare this case to others in the pool, as defined in *State v. Williams*, 308 N.C. 47, 79-80, 301 S.E.2d 335, 355, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177 (1983), and *State v. Bacon*, 337 N.C. 66, 106-07, 446 S.E.2d 542, 563-64 (1994), *cert. denied*, 513 U.S. 1159, 130 L. Ed. 2d 1083 (1995), that "are roughly similar with regard to the crime and the defendant." *State v. Lawson*, 310 N.C. 632, 648, 314 S.E.2d 493, 503 (1984), *cert. denied*, 471 U.S. 1120, 86 L. Ed. 2d 267 (1985). Whether the death penalty is disproportionate "ultimately rest[s] upon the 'experienced judgments' of the members of this Court." *State v. Green*, 336 N.C. 142, 198, 443 S.E.2d 14, 47, *cert. denied*, 513 U.S. 1046, 130 L. Ed. 2d 547 (1994).

This case is distinguishable from the cases in which this Court has found the death penalty disproportionate and entered a sentence of life imprisonment. First, the defendant was convicted of the mur-

ders of three individuals. "We have remarked before, and it bears repeating, that this Court has never found disproportionality in a case in which the defendant was found guilty for the death of more than one victim." *State v. Price*, 326 N.C. at 96, 388 S.E.2d at 107. Further, the jury convicted the defendant on the theory of malice, premeditation, and deliberation in all of the murders. "The finding of premeditation and deliberation indicates a more cold-blooded and calculated crime." *State v. Artis*, 325 N.C. 278, 341, 384 S.E.2d 470, 506 (1989), *sentence vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990).

We recognize that juries have imposed sentences of life imprisonment in several cases which have similarities to the present case. However, "the fact that in one or more cases factually similar to the one under review a jury or juries have recommended life imprisonment is not determinative, standing alone, on the issue of whether the death penalty is disproportionate in the case under review." *State v. Green*, 336 N.C. at 198, 443 S.E.2d at 47. Our review of such cases reveals that they are distinguishable and do not render the sentences of death in this case disproportionate. None of those cases involved a defendant who committed a triple murder, with regard to which the jury found the same aggravating circumstance to exist in all three and an additional aggravating circumstance in two of the murders. It suffices here to say that we have examined all of the cases cited by defendant and conclude that each of them is distinguishable from the present case.

Further, this case is similar to cases in which we have found the death penalty proportionate. We have upheld a sentence of death where, as in this case, the jury found the aggravating circumstances involved in the present case. Here, we conclude that the present case is more similar to certain cases in which we have found the sentence of death proportionate than to those in which we have found the sentence disproportionate or those in which juries have consistently returned recommendations of life imprisonment. *E.g., State v. Ingle*, 340 N.C. 108, 455 S.E.2d 664 (1995) (double murder as to which the jury found the aggravating circumstances that the murder was especially heinous, atrocious, or cruel and that the murder was part of a course of conduct involving other violent crimes—death sentence proportionate); *State v. Moseley*, 338 N.C. 1, 449 S.E.2d 412 (1994) (double robbery-murder as to which the jury found the aggravating circumstances that the murder was part of a course of conduct including other violent crimes; that the murder was especially

heinous, atrocious, or cruel; that the murder was committed while the defendant was engaged in homicide, rape, robbery, etc.; and that defendant was previously convicted of a violent felony—death sentence proportionate), *cert. denied*, 514 U.S. 1091, 131 L. Ed. 2d 738 (1995).

Based on the nature of these crimes, and particularly the features noted above, we cannot conclude as a matter of law that the sentences of death were disproportionate. We hold that defendant received a fair trial and capital sentencing proceeding, free of prejudicial error.

NO ERROR.