STATE OF NORTH CAROLINA v. GARY DEAN GREENE

No. 456A87-5

(Filed 5 May 2000)

**1. Jury— selection—capital sentencing—meaning of life imprisonment**

The trial court did not err in a capital resentencing proceeding by instructing a prospective juror in the presence of other jurors that life imprisonment means imprisonment in the state's prison for life, and that he should not consider what some other arm of the government might do in the future, because: (1) a defendant's eligibility for parole is not a proper matter for consideration by a jury in a capital case; (2) the trial court appropriately instructed the juror in language set forth in the pattern jury instructions for capital murders committed prior to 1 October 1994; and (3) defendant waived this issue because he failed to object to the trial court's remarks to the jurors about the meaning of a life sentence.

**2. Jury— selection—death penalty views—conflicting answers—judgment of trial court**

The trial court did not abuse its discretion in a capital resentencing proceeding by excusing for cause a juror who told the prosecutor that it would be hard for him to find the death penalty warranted under any circumstances and his religious beliefs would substantially impair his duty as a juror to recommend to the trial court a punishment of death if the evidence warranted it, but thereafter upon further questioning stated he could follow the law and vote for the death penalty even though it was against his beliefs, because conflicting answers given by prospective jurors illustrate that a prospective juror's bias may not be provable with unmistakable clarity, and thus, the reviewing courts must defer to the trial court's judgment.

**3. Evidence— limiting cross-examination—witness's criminal record—no prejudice—waiver**

The trial court did not violate defendant's Eighth and Fourteenth Amendment rights in a capital resentencing proceeding by limiting defendant's cross-examination of a State's witness as to her criminal record because: (1) although the Rules of Evidence do not apply in sentencing proceedings, Rule 609(b) could properly be used as a helpful guide to determine that defendant did not give proper notice of his intent to impeach the witness with a conviction, defendant did not make an offer of proof of whether the witness was actually convicted of the offenses, the exact nature of the offenses, or how long ago the convictions were obtained; (2) nothing in the record shows how defendant was prejudiced by exclusion of this impeachment evidence or that such information was relevant; and (3) defendant waived this constitutional issue since he did not raise it in the trial court.

**4. Sentencing— capital—mitigating circumstance—no significant history of prior criminal activity**

The trial court did not err in a capital resentencing proceeding by failing to submit to the jury the mitigating circumstance of no significant history of prior criminal activity under N.C.G.S. § 15A-2000(f)(1), after defendant requested it, because the focus is on whether the criminal activity is such as to influence the jury's sentencing recommendation and the evidence in the present case reveals: (1) most of defendant's prior criminal activity was recurrent, recent, and similar in nature to his conduct the day of the robbery and murder of his father; and (2) defendant had a significant history of recurrent and escalating criminal conduct, most of which was close in time to the robbery-murder.

**5. Sentencing— capital—death penalty not disproportionate**

The trial court did not err by imposing the death sentence for first-degree murder because: (1) defendant was found guilty of first-degree murder based on premeditation and deliberation and under the felony murder rule; (2) the jury found the two aggravating circumstances that the murder was committed while defendant was engaged in the commission of a robbery under N.C.G.S. § 15A-2000(e)(5), and the murder was committed for pecuniary gain under N.C.G.S. § 15A-2000(e)(6); and (3) defendant showed no remorse for the murder of his vulnerable father.

Justice ORR dissenting.

Appeal as of right by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered on 28 May 1998 by Lamm, J., after a capital resentencing proceeding held in Superior Court, Caldwell County, upon defendant's conviction of first-degree murder. Heard in the Supreme Court 11 October 1999.

*Michael F. Easley, Attorney General, by William P. Hart, Special Deputy Attorney General, and Amy C. Kunstling, Assistant Attorney General, for the State.*

*Marshall L. Dayan for defendant-appellant.* ·

FREEMAN, Justice.

Defendant, Gary Dean Greene, was indicted on 8 December 1986 for robbery with a dangerous weapon and the first-degree murder of his father, Pressly ("Press") Greene. He was tried capitally before a jury in August 1987 in Superior Court, Caldwell County. The jury found defendant guilty of robbery with a dangerous weapon and of first-degree murder on the basis of premeditation and deliberation and under the felony murder rule. The trial court subsequently sentenced defendant to death for the murder conviction and to forty years' imprisonment for the robbery conviction. On appeal, this Court found no error. *State v. Greene*, 324 N.C. 1, 376 S.E.2d 430 (1989).

The United States Supreme Court allowed defendant's writ of certiorari, vacating the sentence of death and remanding for further consideration in light of *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369 (1990). *Greene v. North Carolina*, 494 U.S. 1022, 108 L. Ed. 603 (1990). This Court found *McKoy* error and remanded the case for a new capital sentencing proceeding. *State v. Greene*, 329 N.C. 771, 408 S.E.2d 185 (1991). Defendant was again sentenced to death on 28 May 1998 in Superior Court, Caldwell County.

At the resentencing proceeding, the State's evidence tended to show that in early 1986, defendant and his girlfriend since the summer of 1984, Cindy Jones Hopson, moved into a trailer behind the home of defendant's parents. Thereafter, defendant continued a pattern of habitually stealing money from his father.

On 1 May 1986, around 3:30 p.m., Hopson picked defendant up from work in defendant's car. They used the last of their money to buy beer and drank most of it while riding around in the car. Upon returning to the trailer, defendant and Hopson drank the remaining

beer. Wanting more, defendant told Hopson he was going to kill Press and left the trailer carrying a shotgun. When defendant returned to the trailer, he was soaking wet, had "speckles of blood" on his shoes, and was carrying the shotgun. He informed Hopson, "I beat the son of a bitch to death."

Defendant asked Hopson to get him a change of clothes. As Hopson walked to the bedroom to get the clothes, she saw defendant standing in the bathroom holding a wad of money in one hand. Defendant changed and put his wet clothes and shotgun in a brown paper grocery bag.

Defendant and Hopson then left the trailer to take the dog belonging to Hopson's mother to get a haircut. Having forgotten the dog's chain, Hopson returned to the trailer for it at which time she noticed water running out of the basement of Press' house. Defendant told her the water was from his rinsing the basement to wash away Press' blood. Defendant said that he first hit his father when Press was bent over the well in the basement and that he dragged Press' body to the bottom of the basement stairs to make it look like Press had accidentally fallen down the stairs.

On the way to the home of Hopson's mother, defendant and Hopson stopped at a local grocery store to purchase beer with the money that defendant had stolen from his father. As they continued their trip, they drove over the Catawba River bridge on Highway 321, where defendant threw into the river the bag containing his wet clothes and shotgun. Later that same evening, on the return trip to his trailer, defendant threw the shoes he was wearing at the time of the murder into the Catawba River. Further along their route home, defendant instructed Hopson to pull over so he could conceal the money he had stolen. Defendant told Hopson he would kill her if she ever breathed a word of what he had done and she should never admit to anything.

When defendant and Hopson returned home, they were told that defendant's mother had discovered Press dead and had called law enforcement. The investigating officer, Captain Danny Barlow, from the Caldwell County Sheriff's Department, Hopson, and defendant went to defendant's trailer where defendant offered to allow Barlow to search the trailer.

The Caldwell County Sheriff's Department closed Press' case on 27 May 1986, ruling the death accidental.

STATE v. GREENE

[351 N.C. 562 (2000)]

Sometime after May 1986, Hopson moved out of the trailer. One night in July 1986, when Hopson and her roommate, Susan Newton, were drinking, she told Newton that defendant had murdered Press. In August 1986, the State Bureau of Investigation ("SBI") reopened the case. In October, the SBI interviewed Newton and learned of the July conversation. Hopson eventually told SBI Special Agent Rodney Knowles that defendant murdered his father, Press.

Luminol testing revealed the presence of blood in Press' basement. Additional luminol testing at defendant's trailer showed the presence of blood on the bed, the floor of the bathroom, the commode area, the bathtub, and the sink. On 8 December 1986, defendant was charged with the first-degree murder of his father.

[1] Defendant first contends that the trial court erred by instructing a prospective juror in the presence of other jurors that life imprisonment means imprisonment in the state's prison for life, and that he should not consider what some other arm of the government might do in the future. We disagree.

This Court has determined that a defendant's eligibility for parole is not a proper matter for consideration by a jury in a capital case. *State v. White*, 343 N.C. 378, 389, 471 S.E.2d 593, 599, *cert. denied*, 519 U.S. 936, 136 L. Ed. 2d 229 (1996). Here, the trial court was faced with a prospective juror who asked, in the presence of other prospective jurors during jury selection, whether parole was a possibility if defendant received a life sentence. Because defendant committed the murder of his father prior to the 1 October 1994 change in North Carolina's sentencing laws, he was eligible for parole and was not entitled to an instruction to the jury that a life sentence means a sentence of life without parole. *See State v. Skipper*, 337 N.C. 1, 43, 446 S.E.2d 252, 275 (1994), *cert. denied*, 513 U.S. 1134, 130 L. Ed. 2d 895 (1995). Therefore, the trial court appropriately instructed the juror in language set forth in the pattern jury instructions for capital murders committed prior to 1 October 1994, N.C.P.I.—Crim. 150.10 n.2 (1998), and previously approved by this Court in *State v. Robbins*, 319 N.C. 465, 518, 356 S.E.2d 279, 310, *cert. denied*, 484 U.S. 918, 98 L. Ed. 2d 226 (1987).

Although defendant argues that the trial court's instruction amounted to plain error, we have previously decided that plain error analysis applies only to instructions to the jury and evidentiary matters. *See State v. Atkins*, 349 N.C. 62, 505 S.E.2d 97 (1998), *cert. denied*, 526 U.S. 1147, 143 L. Ed. 2d 1036 (1999). "We decline to

extend application of the plain error doctrine to situations in which the trial court has failed to give an instruction during jury *voir dire* which has not been requested." *Id.* at 81, 505 S.E.2d at 109. Furthermore, defendant failed to object to the trial court's remarks to the jurors about the meaning of a life sentence. Therefore, defendant has waived his right to assign error to the trial court's instructions. *See State v. Anderson*, 350 N.C. 152, 187, 513 S.E.2d 296, 317, —— U.S. ——, 145 L. Ed. 2d 326 (1999).

[2] In his second argument, defendant contends the trial court abused its discretion by excusing for cause a juror who was fit to serve, in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution; Article I, Sections 19, 23, and 27 of the North Carolina Constitution; and N.C.G.S. § 15A-1212 (1999). We disagree.

The decision " '[w]hether to allow a challenge for cause in jury selection is . . . ordinarily left to the sound discretion of the trial court which will not be reversed on appeal except for abuse of discretion.' " *State v. Stephens*, 347 N.C. 352, 365, 493 S.E.2d 435, 443 (1997) (quoting *State v. Locklear*, 331 N.C. 239, 247, 415 S.E.2d 726, 731 (1992)), *cert. denied*, —— U.S. ——, 142 L. Ed. 2d 66 (1998). In the present case, juror Watson, the son of a preacher, told the prosecutor that he had reasonably strong religious beliefs about the death penalty which he had held for a long period of time. He said that, because of those beliefs, it would be hard for him to find the death penalty warranted under any circumstances. He further stated that his religious beliefs would substantially impair his duty as a juror to recommend to the trial court a punishment of death if the evidence warranted it. Upon further questioning, Mr. Watson concluded that he could follow the law and "go by which one I thought was right, whoever proved the most." Thereafter he stated that, if he did that and he thought the death penalty was right, "I'd have [to] vote for that." However, he then said, "and that would be against what I believe." In *State v. Davis*, 325 N.C. 607, 386 S.E.2d 418 (1989), *cert. denied*, 496 U.S. 905, 110 L. Ed. 2d 268 (1990), this Court, confronted with similar challenges for cause, held:

> The conflicting answers given by these prospective jurors illustrate clearly the United States Supreme Court's conclusion that a prospective juror's bias may, in some instances, not be provable with unmistakable clarity. In such cases, reviewing courts must defer to the trial court's judgment concerning

STATE v. GREENE

[351 N.C. 562 (2000)]

whether the prospective juror would be able to follow the law impartially.

*Id.* at 624, 386 S.E.2d at 426.

The record fails to show the trial court abused its discretion in determining that the juror's views on the death penalty would have prevented or substantially impaired the performance of his duties as a juror in accordance with his oath and the court's instructions. The trial court properly removed the challenged juror.

[3] In his third assignment of error, defendant contends that the trial court violated the Eighth and Fourteenth Amendments to the United States Constitution by limiting his cross-examination of State's witness Cindy Hopson as to her criminal record. He contends that he was prevented from attacking the witness' credibility and thus prevented from presenting relevant mitigating evidence. We disagree.

Ordinarily, notice of intent to impeach a witness with a conviction more than ten years old is necessary to provide an adverse party with a fair opportunity to contest the use of such evidence. *See* N.C.G.S. § 8C-1, Rule 609(b) (1999). The Rules of Evidence do not apply in sentencing proceedings; however, they may be helpful as a guide to reliability and relevance. See *State v. Bond*, 345 N.C. 1, 31, 478 S.E.2d 163, 179, (1996), *cert. denied*, 521 U.S. 1124, 138 L. Ed. 2d 1022 (1997). The trial judge properly used Rule 609(b) as a guide in this case. Defendant did not give notice of his intent to impeach Hopson, nor did he make an offer of proof as to whether Hopson was actually convicted of the offenses, what the convictions were, the exact nature of the offenses involved, or how long ago the convictions were obtained. Thus, there is nothing in the record which would show this Court that defendant might have been prejudiced by the trial court's excluding impeachment evidence or that such information might have been relevant.

Additionally, defendant has waived appellate review of an alleged constitutional issue because he did not raise the constitutional issue in the trial court. *See State v. Call*, 349 N.C. 382, 424, 508 S.E.2d 496, 513 (1998).

[4] In defendant's fourth assignment of error, defendant contends that the trial court erred in failing to submit to the jury the mitigating circumstance of no significant history of prior criminal activity after defendant requested it. N.C.G.S. § 15A-2000(f)(1) (1999). At the resentencing hearing, evidence before the court of defendant's prior crim-

STATE v. GREENE

[351 N.C. 562 (2000)]

inal record included the following: For the eighteen years prior to the murder of his father and since attaining the age of nineteen in 1968, he had been convicted of twelve offenses directly involving alcohol, one count of assault on a female, one drug offense, one count of damage to property, one count of burning personal property, and one count of felonious larceny. In addition, there was evidence of recent and recurrent uncharged criminal activity reflecting that, in the two years prior to robbing and murdering his father, defendant habitually went into his father's home and stole money. Hopson testified that

> [w]hen Pressley would work in the garden, he would always put his work clothes on. And he would take his clean clothes, everyday clothes, and lay them in his bedroom. And Gary would go up through the basement and go up and get always even denominations, you know, like a hundred, 200, not an off figure. But this particular day Pressley had his work clothes on, but he had his billfold on him. Because Gary stated to me he said, "Damn, he's got his billfold on him."

Hopson also testified that during her two-year relationship with defendant, he would hit her.

We have previously held:

> In deciding whether to submit this statutory mitigating circumstance, the trial court must determine whether a rational jury could conclude that the defendant had no significant history of prior criminal activity. *State v. Wilson*, 322 N.C. 117, 367 S.E.2d 589 (1988). A defendant's criminal history is considered "significant" if it is likely to affect or have an influence upon the determination by the jury of its recommended sentence. *Id.*

*State v. Jones*, 339 N.C. 114, 157, 451 S.E.2d 826, 849-50 (1994), *cert. denied*, 515 U.S. 1169, 132 L. Ed. 2d 873 (1995).

We note that there has been some confusion as to the exact type of crime and number of offenses which determine when the (f)(1) mitigator should or should not be given. In an effort to clarify the law, we once again stress that the focus should be on whether the criminal activity is such as to influence the jury's sentencing recommendation. *See State v. Williams*, 343 N.C. 345, 371, 471 S.E.2d 379, 393 (1996), *cert. denied*, 519 U.S. 1061, 136 L. Ed. 2d 618 (1997).

In the present case, much of defendant's prior criminal activity was recurrent, recent, and similar in nature to his conduct the day of

the robbery and murder of his father, and for these reasons signifi-
cant. Most of the criminal activity which resulted in defendant's prior
convictions occurred after defendant was thirty years old and within
seven years of the murder of his father. Prior to robbing his father
and beating him to death with a shotgun, defendant habitually
sneaked into his father's house and stole money while his father was
outside working. During that same time, defendant would assault his
girlfriend, Cindy Hopson. Thus, defendant had a significant history of
recurrent and escalating criminal conduct, much of which was close
in time to the robbery-murder. When the trial court is deciding
whether a rational juror could find the (f)(1) mitigating circumstance
to exist, the nature and age of the prior criminal activities are impor-
tant, and the mere number of criminal activities is not dispositive.
*State v. Walls*, 342 N.C. 1, 56, 463 S.E.2d 738, 767 (1995), *cert. denied*,
517 U.S. 1197, 134 L. Ed. 2d 794 (1996). Furthermore, unadjudicated
crimes may properly be considered in determining the sufficiency of
the evidence under (f)(1). *State v. Ingle*, 336 N.C. 617, 643, 445 S.E.2d
880, 893 (1994), *cert. denied*, 514 U.S. 1020, 131 L. Ed. 2d 222 (1995).

Defendant's conduct in the robbery-murder was strikingly similar
to his lengthy history of prior criminal activity and convictions
involving alcohol-related offenses, drugs, damage to property,
assault, larceny, and his recent habitual thefts from his father. On the
day of the robbery-murder, defendant and his girlfriend had been
sharing a twelve-pack of beer. Defendant was upset that his father
had his wallet with him because he wanted more beer, and he wanted,
as he so often had before, to steal money from his father. The record
also shows that he wanted to kill his father to better insure his share
of an inheritance. After mercilessly and violently beating his seventy-
four-year-old father to death with a shotgun, stealing his money,
cleaning up the bloody crime scene, changing his bloodstained
clothes, and disposing of the evidence, defendant went to buy more
beer with the money he had stolen from his father. In light of these
similarities to defendant's repeated, recent, and escalating criminal
activities related to substance abuse, stealing, and violence, the trial
court correctly determined that no rational juror could have con-
cluded that defendant's prior criminal activity was insignificant and
thus that this history would not have influenced or had an effect upon
the jury verdict as a mitigating circumstance. The trial court correctly
reasoned defendant's past criminal history was significant. *See, e.g.,
State v. Sexton*, 336 N.C. 321, 375, 444 S.E.2d 879, 910, *cert. denied*,
513 U.S. 1006, 130 L. Ed. 2d 429 (1994).

STATE v. GREENE

[351 N.C. 562 (2000)]

Defendant concedes that his next two arguments have been previously decided contrary to his position by this Court: (1) the trial court erred by permitting jurors to reject submitted nonstatutory mitigating circumstances on the basis that they had no mitigating value, and (2) the trial court erred by using the term "may" in its instructions in sentencing Issues Three and Four.

Defendant has raised these issues so that we may reexamine our prior holdings and to preserve these issues for possible further judicial review. We have considered defendant's arguments and find no compelling reason to depart from our prior holdings.

[5] Having concluded that defendant's capital sentencing proceeding was free from prejudicial error, we must now review the record and determine: (1) whether the evidence supports the aggravating circumstances found by the jury; (2) whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; and (3) whether the sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. N.C.G.S. § 15A-2000(d)(2). After having reviewed the record, transcript, and briefs in this case, we conclude that they fully support the aggravating circumstances found by the jury. We further conclude that the sentence of death in this case was not imposed under the influence of passion, prejudice or any other arbitrary factor. We therefore turn to our final statutory duty of proportionality review.

In the present case, defendant was found guilty of first-degree murder on the basis of premeditation and deliberation and under the felony murder rule. He was also convicted of robbery with a dangerous weapon. Following a capital sentencing proceeding, the jury found two aggravating circumstances: (1) the murder was committed while defendant was engaged in the commission of a robbery, N.C.G.S. § 15A-2000(e)(5); and (2) the murder was committed for pecuniary gain, N.C.G.S. § 15A-2000(e)(6).

The trial court submitted no statutory mitigating circumstances. At least one juror found only one of the five nonstatutory mitigating circumstances which had been submitted for its consideration, "whether the defendant had a good relationship with his father prior to the murder." No juror found any mitigating circumstances under the statutory catchall, N.C.G.S. § 15A-2000(f)(9).

STATE v. GREENE

[351 N.C. 562 (2000)]

Proportionality review is designed to "eliminate the possibility that a person will be sentenced to die by the action of an aberrant jury." *State v. Holden*, 321 N.C. 125, 164-65, 362 S.E.2d 513, 537 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). As already noted, the record shows that the jurors deliberated and made their findings as to the aggravating and mitigating circumstances as well as their recommendation of death without undue passion or prejudice. No improper considerations appear in the record.

Neither is the imposition of the death penalty in defendant's case disproportionate or excessive in comparison to similar cases. First, the jury convicted defendant under the theory of premeditation and deliberation. This Court has stated that "[t]he finding of premeditation and deliberation indicates a more cold-blooded and calculated crime." *Artis*, 325 N.C. at 341, 384 S.E.2d at 506. Second, defendant showed no contrition for the heartless murder of his aging father, a crime he sought to make look like an accident. In our prior consideration of this case on proportionality review, this Court specifically focused on the relationship of defendant to his victim, the victim's position of enhanced vulnerability, the number of blows inflicted, and the attempt to make the murder look like an accident. *Greene*, 324 N.C. at 25-26, 376 S.E.2d at 445. This Court found that defendant's actions "show a meanness on the part of a mature, calculating adult without remorse for his crime or mercy towards his victim." *Id.* at 26, 376 S.E.2d at 445. In especially brutal murders where the victim is particularly vulnerable, where the defendant has shown no remorse for his actions, and where the jury found intent to kill, death sentences have been returned. *See, e.g., State v. Frye*, 341 N.C. 470, 461 S.E.2d 644 (1995), *cert. denied*, 517 U.S. 1123, 134 L. Ed. 2d 526 (1996); *State v. Burr*, 341 N.C. 263, 461 S.E.2d 602 (1995), *cert. denied*, 517 U.S. 1123, 134 L. Ed. 2d 526 (1996).

Based on the foregoing and the entire record in this case, we cannot conclude as a matter of law that the sentence of death was excessive or disproportionate. We hold that defendant received a fair capital sentencing proceeding, free of prejudicial error. Accordingly, we leave the judgment of the trial court undisturbed.

NO ERROR.

Justice ORR dissenting.

The majority notes "that there has been some confusion as to the exact type of crime and number of offenses which determine when

the (f)(1) mitigator should or should not be given." The majority then attempts to clarify the law by restating the underlying principle used when analyzing whether the (f)(1) statutory mitigating circumstance should be given: "the focus should be on whether the criminal activity is such as to influence the jury's sentencing recommendation." After a discussion of defendant's criminal history, the majority concludes that

> [i]n light of [the] similarities to defendant's repeated, recent, and escalating criminal activities related to substance abuse, stealing, and violence, the trial court correctly determined that no rational juror could have concluded that defendant's prior criminal activity was insignificant and thus that this history would not have influenced or had an effect upon the jury verdict as a mitigating circumstance.

In recent years, we have examined numerous cases involving submission of the (f)(1) mitigating circumstance and upheld the trial court's submission of that mitigator over the defendants' objections. In *State v. Williams*, 350 N.C. 1, 13, 510 S.E.2d 626, 635, *cert. denied*, —— U.S. ——, —— L. Ed. 2d ——, 68 U.S.L.W. 3228 (1999), an opinion written by then-Chief Justice Mitchell for a unanimous Court, we stated:

> Defendant next contends that the trial court erred by submitting the (f)(1) mitigating circumstance to the jury over defendant's objection. Defendant informed the trial court that he would not request submission of the (f)(1) mitigator because his history of beating women was closely related to the manner of death in Ms. Plunkett's murder. Thereafter, over defendant's objection, the trial court submitted the (f)(1) mitigating circumstance. The jury did not find the existence of the (f)(1) mitigator.

> Defendant asserts that no reasonable juror could have found that defendant's criminal history was insignificant, and therefore, it was error for the trial court to submit the circumstance. Evidence in the present case tended to show that defendant had been convicted of numerous misdemeanor assaults on females, as well as various other offenses including communicating threats, trespass, and burglary. The most serious of defendant's prior convictions were for assaults on his wife and girlfriends. One of those assaults occurred in 1995, four in 1992, and one in 1989. The trial court concluded from the evidence that a reason-

able juror could find that defendant had "no significant history of prior criminal activity," within the meaning of the statute, and that it was required to submit the (f)(1) statutory mitigating circumstance for the jury's consideration. We agree. A rational juror could have found defendant's history of prior criminal activity, which consisted mostly of misdemeanors, to be insignificant with regard to the jury's capital sentencing recommendation. After determining that a rational juror could find the evidence sufficient to support the (f)(1) mitigating circumstance, the trial court was required to submit it to the jury. This argument is without merit.

*See, e.g., State v. Williams,* 343 N.C. 345, 372, 471 S.E.2d 379, 394 (1996) (upholding the trial court's decision to submit the (f)(1) mitigating circumstance where the "defendant's record consist[ed] of being convicted of misdemeanor larceny, misdemeanor breaking or entering, and misdemeanor larceny, two counts; misdemeanor possession of stolen property, carrying a concealed weapon—misdemeanor, misdemeanor [breaking and entering], and possession of a weapon of mass destruction, uttering forged papers, misdemeanor assault on a female, and misdemeanor assault with a deadly weapon"), *cert. denied,* 519 U.S. 1061, 136 L. Ed. 2d 618 (1997); *State v. Walls,* 342 N.C. 1, 56, 463 S.E.2d 738, 767 (1995) (upholding the submission of the (f)(1) mitigating circumstance where the defendant had criminal convictions for "driving while impaired, assault, communicating threats and escape, nonfelonious breaking and entering, receiving stolen goods, possessing a stolen vehicle and possessing stolen credit cards"), *cert. denied,* 517 U.S. 1197, 134 L. Ed. 2d 794 (1996). These cases all noted that the focus of the decision concerning submission of the (f)(1) mitigating circumstance should be placed on whether the criminal history is likely to influence the jury's sentencing recommendation as to life or death.

We have also recently held that the trial court erred when it refused to submit the (f)(1) mitigating circumstance where the defendant's criminal record consisted primarily of nonviolent crimes against property. *See, e.g., State v. Fletcher,* 348 N.C. 292, 326-27, 500 S.E.2d 668, 688 (1998) (holding that the trial court erred by not submitting the (f)(1) mitigating circumstance, even though the defendant did not request it, where the "defendant had a history of stealing since he was a child and . . . had been convicted of . . . two counts of felonious breaking and entering, three counts of felonious larceny, felonious possession of stolen property, misdemeanor breaking and

entering, five counts of misdemeanor larceny, and assault on a female"), *cert. denied*, —— U.S. ——, 143 L. Ed. 2d 113 (1999).

In this case, defendant had a lengthy criminal record primarily consisting of incidents involving alcohol and/or drug abuse, petty theft from his father, driving offenses, and one conviction for assault on a female.

In each case cited above, as well as numerous other cases decided by this Court, we have held that a reasonable juror could, in the face of the evidence, conclude that the defendant's criminal history—although substantial—was not significant to such a degree as to tilt the scale in favor of imposing a death sentence and thus could have mitigating value. However, here, where defendant requested submission of the (f)(1) mitigating circumstance, the majority holds that the trial court did not err in its decision to deny defendant's request to submit the (f)(1) mitigating circumstance. This simply is inconsistent with the Court's long line of cases explaining when the (f)(1) mitigating circumstance should and should not be given to the jury for consideration.

At a minimum, defendant and his counsel felt that defendant's criminal history had the potential for being a mitigating circumstance in the jury's deliberation over life or death. Furthermore, defendant's criminal history was devoid, with one exception for assault, of any crimes of violence toward the person. Defendant's increased substance abuse problems in the years prior to the murder and his practice of stealing money from his father's wallet simply are not the kind of egregious criminal acts that would warrant a refusal to submit the (f)(1) mitigating circumstance, particularly in light of defendant's request for its submission. Therefore, I dissent and would grant defendant a new sentencing hearing.