STATE OF NORTH CAROLINA
v.
RYAN LEWIS LITTLE.
No. COA07-47
Court of Appeals of North Carolina.
Filed August 21, 2007
This case not for publication
Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Elizabeth N. Strickland, for the State.
Sue Genrich Berry, for defendant-appellant.
JACKSON, Judge.
On 6 October 2003, Ryan Lewis Little ("defendant") was indicted on charges of breaking or entering, felony larceny, and conspiracy. The State alleged that defendant conspired with Andre Little ("Little") and Miguel Guzman ("Guzman") to commit the offenses underlying the conspiracy.
The matter first was called for trial on 25 March 2004. Defendant was represented by Don Gillespie ("Gillespie"). Prior to trial, Gillespie made an oral motion to withdraw as counsel. Gillespie stated that defendant sought to call a particular witness to testify, and that in his opinion, it could create an "ethical" violation if the witness were called. Following an in camera hearing, the trial court determined that "it would be an ethical violation for Mr. Gillespie to continue forward in representation of [ defendant] based on one assertion of a potential witness that he may call." Accordingly, the trial court allowed the motion to withdraw and appointed new counsel to represent defendant.
Defendant's case was called again for trial on 11 May 2004. Prior to trial, defendant's counsel informed the court that defendant asked that Little be called to testify as a witness on his behalf. The district attorney then recounted to the trial court the circumstances of 25 and 26 March 2004, when defendant's case was called first for trial. The district attorney stated that Gillespie told him that he went to speak to Little regarding his testimony. Gillespie asked Little, "What happened?," to which Little responded that "What happened is my brother [the defendant] and I broke into this house and stole a bunch of stuff." Gillespie then asked Little how this information helped the defendant. Little replied that, "Okay. Well, I'll just testify to whatever my brother wants me to. I'll testify that he wasn't there." The district attorney stated that Gillespie tried to proceed to trial without calling Little, but defendant insisted that Little be called as a witness. Gillespie then was allowed to withdraw. The district attorney intimated that if Little was called to testify, he would want to call Gillespie as a witness regarding Little's potential perjury. The district attorney further stated, however, that it was his understanding that Little no longer wished to testify. The trial court attempted to contact Little, who at the time, was an inmate at the Craven Correctional Facility. Little informed the court that he would not speak to anyone without his lawyer present. The court then spoke with Little's attorney. Afterward, Little communicated to defendant and his attorney that he did not wish to testify. The court then stated that "[i]f [Little] does not wish to testify, I am not going to compel him to do so." Defendant did not object, and the matter proceeded to trial.
At trial, the State presented evidence which tended to show that on 5 August 2003, Guzman picked up defendant and Little in Guzman's car. After riding around for awhile, the three men went looking for a house to break into. Eventually, they found a house belonging to Nancy Euliss ("Euliss"). Euliss was not at home at the time, and no cars were parked in front of the house. Defendant knocked on the door, then went around to the back of the house. When defendant did not return to the car, Guzman drove to the back of the house and saw that a window was broken. Little got out of the car and entered the house through the window. A short time later, Guzman followed. The three men took money, a gun, a safe, as well as other items, and then returned to the car and left.
About two minutes later, Sergeant M.H. Carrier ("Sergeant Carrier") of the Guilford County Sheriff's Department observed Guzman's vehicle going in the opposite direction from him and saw that it did not have a license plate displayed. He turned his patrol car around and stopped Guzman's vehicle. Sergeant Carrier approached the vehicle and engaged the occupants in conversation. Sergeant Carrier testified that the men "were sweating profusely and breathing so heavily that it struck me as odd." Sergeant Carrier observed a safe on the back seat, and Little told him that " he had just [bought] it for his grandmother." Sergeant Carrier asked to see a receipt, and Little changed his story, stating they were "just carrying it around[.]" Sergeant Carrier asked Guzman to exit the vehicle and expressed concern to him that a crime might have been committed. Guzman consented to a search of the vehicle, and Sergeant Carrier searched the car and frisked the occupants. Sergeant Carrier found that all three men had cash on their persons, including 50-cent coins, one of which dated back to 1900. Inside the car he found a large amount of paper currency, racing gloves, a .22 rifle, and old football tickets. Eventually, Guzman admitted to Sergeant Carrier that they had broken into a house. Guzman then led Sergeant Carrier back to Euliss's house. Sergeant Carrier observed the broken window, entered the house and found that it had been "ransacked." At trial, Euliss identified several items recovered from Guzman's car, including the rifle, the safe, and the old football tickets.
Defendant was convicted on all counts. The trial court consolidated the larceny and breaking or entering charges and sentenced defendant to a term of eleven to fourteen months imprisonment . The trial court additionally sentenced defendant to a consecutive term of eight to ten months imprisonment for conspiracy. Defendant appeals. Defendant first argues the trial court erred, or committed plain error, by refusing to compel Little to appear as a witness. At defendant's trial, he informed the court that he would like Little to testify on his behalf. Defendant never made a formal motion requesting the attendance of Little, nor did he make a motion to compel Little's appearance. In addition, defendant did not subpoena Little to testify. Defendant's assignment of error asserts that the trial court denied him his constitutional right to present his own witnesses to establish a defense in violation of the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 23, of the North Carolina Constitution. Defendant did not raise this issue at trial. Defendant never objected to nor made any argument that the trial court's refusal to compel Little to appear and testify violated his constitutional rights. "' Constitutional issues not raised and passed upon at trial will not be considered for the first time on appeal.'" See State v. Williams, 355 N.C. 501, 528, 565 S.E.2d 609, 625 (2002) (citations omitted), cert. denied, 537 U.S. 1125, 154 L. Ed. 2d 808 (2003) . Additionally, to the extent that defendant argues the issue should be reviewed under a plain error analysis, we note that plain error review is unavailable in this case. See State v. Greene , 351 N.C. 562, 566, 528 S.E.2d 575, 578 (holding that "plain error analysis applies only to instructions to the jury and evidentiary matters." ), cert. denied , 531 U.S. 1041, 148 L. Ed. 2d 543 (2000). Accordingly, we decline to review defendant's assignment of error. Defendant next argues that the trial court erred by denying his motion for a mistrial. During deliberations, the jury sent the court a note that read as follows: "Does felonious [breaking and entering] infer that the window was broken by [defendant] or just the value or intent to enter premises?" The trial court discussed the question with the parties and it was agreed that the trial court would provide additional instructions to the jury. The trial court brought the jury back to the courtroom and instructed them on the elements of breaking and entering and larceny. The jury was then sent out of the courtroom to resume deliberations. Upon the jury's exit from the courtroom, the parties expressed concern that the trial court had instructed the jury on felonious larceny, but not misdemeanor larceny. The court was then notified that the jury had reached a verdict. The jury returned to the courtroom. However, rather than allow the jury to announce the verdict, the trial court instructed the jury on misdemeanor larceny and misdemeanor breaking and entering. The trial court then requested that the jury return to the jury room and resume deliberations. After the jury exited the courtroom, defendant moved for a mistrial. Defendant's motion was denied.
Defendant asserts that the trial court should have granted his motion for a mistrial when it required the jury to resume deliberations after the jury had announced it had reached a verdict. Defendant further claims as grounds for a mistrial the trial court's failure to instruct the jury consistent with its announcement to the parties. Defendant contends that this combination of errors "makes it impossible to have confidence in the verdicts in this case." We are not persuaded.
Whether to declare a mistrial is a decision
"within the sound discretion of the trial court and its ruling will not be disturbed on appeal unless it is so clearly erroneous as to amount to a manifest abuse of discretion." It is appropriate for a trial court to declare a mistrial "only when there are such serious improprieties as would make it impossible to attain a fair and impartial verdict under the law."
State v. Bowman, 349 N.C. 459, 472, 509 S.E.2d 428, 436 (1998) (citations omitted), cert. denied, 527 U.S. 1040, 144 L. Ed. 2d 802 (1999). Here, defendant did not assign error to any of the instructions given to the jury. Moreover, the instructions given to the jury, after it had informed the trial court that it had reached a verdict, were the instructions requested by defendant. See State v. Weddington, 329 N.C. 202, 210, 404 S.E.2d 671, 677 (1991) ("The instructions given were in conformity with the defendant's assent and are not error. The defendant will not be heard to complain on appeal when the trial court has instructed adequately on the law and in a manner requested by the defendant.") (citation omitted).
We further note that the trial court explained to the jury that it did not know the verdict, was not trying to influence the jury's decision, and was reinstructing the jury in the interests of being "thorough." The trial court then instructed the jury to "oblige me by going back into your jury room for a moment, determining whether or not what I have just read to you has any impact on your choices, and then letting us know when you're ready to come back into the courtroom." It is well established that "[j]urors are presumed to follow the trial court's instructions." State v. McNeil, 350 N.C. 657, 689, 518 S.E.2d 486, 506 (1999) (citing State v. Jennings, 333 N.C. 579, 618, 430 S.E.2d 188, 208, cert. denied, 510 U.S. 1028, 126 L. Ed. 2d 602 (1993)).
Therefore, we conclude that the trial court did not abuse its discretion by denying defendant's motion for a mistrial. Accordingly, we hold no error.
No error.
Chief Judge MARTIN and Judge CALABRIA concur.
Report per Rule 30(e).