AN UNPUBLISHED OPINION OF THE NORTH CAROLINA COURT OF APPEALS DOES NOT CONSTITUTE CONTROLLING LEGAL AUTHORITY. CITATION IS DISFAVORED, BUT MAY BE PERMITTED IN ACCORDANCE WITH THE PROVISIONS OF RULE 30(E)(3) OF THE NORTH CAROLINA RULES OF APPELLATE P  R  O  C  E  D  U  R  E  .

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA14-965

Filed: 19 May 2015

Rockingham County, No. 12 CRS 1674, 51735

STATE OF NORTH CAROLINA, Plaintiff,

v.

JAMIE REISON, Defendant.

Appeal by defendant from judgment entered 12 December 2013 by Judge Reuben Young in Rockingham County Superior Court. Heard in the Court of Appeals 4 March 2015.

> *Attorney General Roy Cooper, by Assistant Attorney General Nancy D. Hardison, for the State.*

> *Appellate Defender Staples Hughes, by Assistant Appellate Defender Jillian C. Katz, for defendant.*

ELMORE, Judge.

On 10 September 2012, Jamie Rieson (defendant) was indicted on one count each of felony breaking and entering, first-degree arson, and larceny after breaking and entering. After a jury trial, defendant was found guilty of the charges. Defendant was sentenced as a prior record level I to a term of 64-89 months imprisonment for first-degree arson, 6-17 months imprisonment for larceny breaking and entering, and 6-17 months imprisonment for felony breaking and entering, which were to run consecutively. Defendant appeals. After careful consideration, we conclude that defendant received a trial free from error.

## I. **Background**

The State's evidence at trial tended to show: In 2012, defendant was residing in a camper on his father's property at 204 Park Road in Eden. Wayne Pulliam's residence was located next door at 206 Park Road. Mr. Pulliam's home was two-stories and had a wooden front porch. Mr. Pulliam's property also contained three locked outbuildings where he kept miscellaneous tools.

On the night of 21 April 2012, Officer Brian Roland of the Eden Police Department responded to a call for assistance. Officer Roland drove to the reported location and encountered defendant, who claimed to have been assaulted. Officer Roland observed that defendant was intoxicated and agreed to give him a ride to defendant's father's property. Defendant indicated that he was camping on the property, as there was no actual structure or residence built on the land. Officer

Roland did not notice anything suspicious about the neighboring Pulliam property when he drove by it.

After dropping defendant off, Officer Roland drove approximately two minutes down the road to a gas station to complete the necessary paperwork in his patrol vehicle. Shortly thereafter, Officer Roland heard a fire call come over his radio for 206 Park Road. He realized that the fire location was next door to where he'd recently dropped off defendant. Officer Roland returned to the property, which was completely engulfed in flames.

Mr. Pulliam testified that he was asleep in a back bedroom when he woke to find that the front of his house was engulfed in flames. To escape the fire, Mr. Pulliam was forced to jump from a first-floor window. Investigators determined that the fire originated on the front porch and had been set intentionally, using gasoline as an accelerant. The Pulliam residence was completely destroyed by the fire.

Deputy Chief Cicero Thomas Underwood of the fire department was dispatched to the scene. He, Mr. Pulliam, and Officer Roland each saw defendant at the scene and reported that defendant appeared intoxicated and was acting erratically. Mr. Pulliam testified that he smelled the odor of gasoline on defendant. Mr. Pulliam also alleged that defendant was possibly angry with him because Mr. Pulliam had refused to give defendant a ride that night. Mr. Pulliam also alleged

that defendant was likely upset because defendant learned that Mr. Pulliam's brother had engaged in a sexual relationship with defendant's girlfriend.

On 22 April 2012, the night after the fire, the outbuildings located on Mr. Pulliam's property were broken into and numerous saws and other tools were stolen.

Mr. Bruce Southard, who was also charged in connection with this crime, testified against defendant in conjunction with his plea bargain. Mr. Southard alleged that defendant slept at his residence on the evening of the fire. Mr. Southard testified that he smelled gas on defendant and that defendant later admitted to setting fire to the Pulliam residence. Mr. Southard also alleged that defendant asked him to retrieve numerous tools from defendant's father's property and sell them. Mr. Southard admitted that he agreed to help defendant sell the tools, which he alleged were covered in smoke and soot.

Mr. Southard and defendant enlisted the assistance of Clarence Poythress, Jr. in retrieving the tools from defendant's father's property. Mr. Poythress testified that the tools were dirty and soot covered. Mr. Poythress helped defendant transport the tools to Donnie and Cecil Carter's residence. Donnie Carter, and his son, Cecil, purchased the tools from defendant.

The investigation of the arson and theft of the tools was assigned to Officer Ronnie Markham of the Eden Police Department. In an interview with Officer Markham, Mr. Poythress described helping defendant and Mr. Southard transport

the tools from defendant's property to the Carters. Officer Markham testified that Donnie and Cecil Carter alleged that they had sold the tools at the flea market, except for one Craftsman saw that was still in the box. Detective Markham confiscated the Craftsman saw. The Craftsman saw was not entered into evidence at trial, and Mr. Pulliam did not identify the saw as having belonged to him.

Defendant testified on his own behalf at trial, maintaining that he was innocent of all charges.

At trial, the trial court instructed the jury as follows as to the charge of felonious larceny:

> For you to find the defendant guilty of this offense, the State must prove six things beyond a reasonable doubt:
>
> First, that the defendant took property belonging to another.
>
> Second, that the defendant carried away the property.
>
> Third, that the victim did not consent to the taking and carrying away of the property.
>
> Fourth, that at the time, the defendant intended to deprive him of its use permanently.
>
> Fifth, that the defendant knew he was not entitled to take the property.
>
> And sixth, that the property was taken from a building after a breaking or entering or that the property was worth more than one thousand dollars.
> . . .

5

The State seeks to establish the defendant's guilt by the doctrine of recent possession. For this doctrine to apply, the State must prove three things beyond a reasonable doubt:

First, that property was stolen.

Second, that the defendant had possession of this property. A person possesses property when that person is aware of its presence and has, either alone or together with others, both the power and intent to control its disposition or use.

And third, that the defendant had possession of this property so soon after it was stolen and under such circumstances as to make it unlikely that the defendant obtained possession honestly.

The jury found defendant guilty of felonious larceny. Defendant appeals this conviction.

## II.    Analysis

Defendant's sole argument on appeal is that the trial court erred in instructing the jury on the doctrine of recent possession in connection with the felonious larceny charge. We disagree.

Rule 10(b)(1) of the North Carolina Rules of Appellate Procedure requires a party to present a timely request, objection, or motion to the trial court to preserve a question for appellate review. *See* N.C. R. App. P. 10(a)(1). At trial, defendant objected to the trial court's jury instruction on the doctrine of recent possession on grounds that such instruction was "surplusage." Defense counsel stated, "I view this as being surplusage, Judge . . . given the evidence that's before the Court at this

6

point." On appeal, defendant argues that the trial court's instruction was given in error because the State failed to present sufficient evidence that the property described in the indictment was stolen. Because defendant objected to the trial court's jury instruction on grounds of "surplusage," not insufficiency of the evidence, which is what defendant argues on appeal, this issue is not properly preserved. Accordingly, we will review this issue for plain error.

Our Supreme Court has held that "plain error analysis applies only to instructions to the jury and evidentiary matters." *State v. Greene*, 351 N.C. 562, 566, 528 S.E.2d 575, 578 (2000). Plain error arises when the error is "'so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]'" *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d. 513 (1982)). "Under the plain error rule, defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result." *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993).

It is well established that "[a] jury instruction is proper if it is based on some reasonable view of the evidence." *State v. Lee*, 213 N.C. App. 392, 395, 713 S.E.2d 174, 177 (2011) (quotation and citation omitted). "The doctrine of recent possession allows the jury to infer that the possessor of certain stolen property is guilty of

larceny." *State v. Pickard*, 143 N.C. App. 485, 487, 547 S.E.2d 102, 104 (2001). For this doctrine to apply, the State must show that "(1) the property described in the indictment was stolen; (2) the stolen goods were found in defendant's custody and subject to his control and disposition to the exclusion of others; and (3) the possession was recently after the larceny, mere possession of stolen property being insufficient to raise a presumption of guilt." *State v. Maines*, 301 N.C. 669, 674, 273 S.E.2d 289, 293 (1981) (internal citations omitted).

Defendant argues that the State failed to establish that the recovered tool—a "Craftsman saw in the container"—was stolen. Defendant specifically contends that the first prong of the recent possession test was not met because the recovered tool was not unique and because Mr. Pulliam never identified the Craftsman saw as being one of the stolen items.

We are not persuaded by defendant's argument. The State's evidence can reasonably be viewed as showing that the Craftsman saw was stolen property, and therefore the trial court did not err by instructing the jury on the doctrine of recent possession.

The first prong of the "recent possession" test requires that the property be identified as stolen. To satisfy this prong, "the property need not be unique to be identified." *Lee*, 213 N.C. App. At 395, 713 S.E.2d at 177. "Non-unique property may be identified by reference to characteristics other than its appearance: the

assemblage or combination of items recovered, the quantity of items recovered, and the stamps and marks on items recovered." *Id.* (citations and quotations omitted). The State may present either direct or circumstantial evidence to satisfy its burden. *Id.* "[C]ircumstantial evidence is proof of a chain of facts and circumstances indicating the guilt or innocence of a defendant." *Id.* at 396, 713 S.E.2d at 177 (quoting *State v. Adcock*, 310 N.C. 1, 36, 310 S.E.2d 587, 607–08 (1984)). We hold that the State produced sufficient circumstantial evidence from which the jury could conclude that the recovered Craftsman was stolen.

Mr. Pulliam testified that on the evening after the fire he had between twenty and twenty-five saws stolen from the three outbuildings located on his property. Mr. Southard testified that on the evening after the fire, defendant requested his help in selling a variety of saws because defendant "need[ed] to get rid of [them] quick." Mr. Southard stated that most of the tools were covered in smoke and "smut," as if they had been near a fire. Mr. Southard told Officer Ronnie Markham that defendant admitted he stole the tools from "next to his daddy's house," which was the Pulliam property. Mr. Southard and Mr. Poythress helped defendant transport the tools from the property so that they could be sold to Cecil and Donnie Carter.

Detective Markham testified that Cecil and Donnie Carter admitted to purchasing multiple tools from defendant and selling them at the flea market. Cecil and Donnie Carter informed Detective Markham that the only remaining tool they

had in their possession was the Craftsman saw in the box, which they turned over to law enforcement.

To recap, it is undisputed that numerous saws were stolen from the outbuildings on Mr. Pulliam's property; Mr. Southard and Mr. Poythress disclosed that they aided defendant in transporting the tools from defendant's father's residence to the Carters; and the Carters admitted to purchasing the tools from defendant, which included the Craftsman saw in the box. Given this evidence, we hold that the State produced sufficient circumstantial evidence so that the jury could have concluded that the Craftsman saw was stolen from the Pulliam residence on 22 April 2014. Accordingly, we conclude that the first prong of the doctrine of recent possession test was satisfied.

Defendant does not argue that the State failed to present sufficient evidence to satisfy prongs two and three of the recent possession test. Therefore, we need not address whether the State presented sufficient evidence to satisfy the remaining prongs.

Defendant has failed to convince this Court that the trial court erred in instructing the jury on the doctrine of recent possession. Assuming *arguendo* that such instruction was error, defendant certainly has not shown that such error rose to the level of plain error. Accordingly, we hold that defendant received a trial free from error.

10

No error.

Judge INMAN concurs.

Judge GEER concurs in result only.

Report per Rule 30(e).